UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WELLS FARGO BANK, NA,

                    Plaintiff,

v.                                                              Case No: 09-11249
                                                                Honorable David M. Lawson
MPC INVESTORS, LLC, DOMINIC MOCERI,
GERALD CARNAGO, FRANCIS V MOCERI,
MARIANO MOCERI, PETER K BURTON,
ROBERT M KATZMAN, LAURENCE R GOSS,
STEVEN BENTLEY, SALVATORE J
PALAZZOLO, SEBASTIAN D PALAZZOLO,
GREGORY A CARNAGO, AND DOMINIC J.
MOCERI,

                    Defendants,

_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES

This case involves the plaintiff-lender's attempt to recover from several general and limited

guarantors on a defaulted loan.  Judgment on the outstanding debt amount was entered against

defendant MPC Investors, LLC (the primary borrower), individual defendant Gerald Carnago and

his trust (a limited guarantor), and defendants Dominic Moceri, Francis Moceri, Mariano Moceri,

Peter Burton, Robert Katzman, Laurence Goss, Salvatore Palazzo, Sebastian Palazzolo, Gregory

Carnago, and their respective trusts (general guarantors).  The loan documents contain language

obligating the borrowers and guarantors to pay in addition "all attorneys' fees and expenses"

incurred by the lender in enforcing the loan agreement.  Am. Compl., Ex. 1, Loan Agreement § 8.5;

Ex. 3, Guaranty § 8.  The plaintiff now moves for attorney's fees totaling $114,458.22 against MPC

and the general guarantors, and $106,594.22 against the limited guarantor.  The plaintiff filed a

supplemental affidavit for additional fees incurred for attempting to collect the judgment against Gerald Carnago amounting to $105,241.85, and additional fees and expenses of $120,097.75 against MPC and the general guarantors. Defendants Gerald and Gregory Carnago oppose the motion on various grounds relating to the amounts claimed, but they do not challenge the plaintiff's right to *some* amount of attorney's fees under the loan documents.

Subject matter jurisdiction over the case is based on diversity of citizenship. Therefore, the Court must apply the law of the forum state's highest court, which in this case is Michigan law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (quoting *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)). The Sixth Circuit has held that state law governs the award of attorney's fees in diversity cases. *Miller v. Alldata Corp.*, 14 F. App'x 457, 468 (6th Cir. July 6, 2001) (citing *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 312 & n.5 (6th Cir. 1997)); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 259 n.31 (1967).

The general rule is that "absent express statutory language or an enforceable contract, litigants pay their own attorneys' fees." *Mencer v. Princeton Sq. Aptmts.*, 228 F.3d 631, 636 (6th Cir. 2000) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 257 (1975)); *Nemeth v. Abonmarche Dev., Inc.*, 457 Mich. 16, 37-38, 576 N.W.2d 641, 651 (Mich. 1998). However, courts may award attorney's fees to a prevailing party if the parties include a provision in their contract authorizing such an award. *See, e.g.*, *Miller*, 14 F. App'x at 468 (citing *Hall v. Cole*, 412 U.S. 1, 4-5 (1973)); *Nemeth*, 457 Mich. at 38-39, 576 N.W.2d at 651-52; *Zeeland Farm Servs. v. JBL Enters.*, 219 Mich. App. 190, 195-96, 555 N.W.2d 733, 736 (1996).

As with most attorney's fee requests, attorney's fee awards based on contract provisions are limited to "reasonable" fees, and the party requesting the award bears the burden of establishing reasonableness. *Zeeland Farm Servs.*, 219 Mich. App. at 195-96, 555 N.W.2d at 736; *Petterman v. Haverhill Farms, Inc.*, 125 Mich. App. 30, 33, 335 N.W.2d 710, 712 (1983). Federal courts generally rely on the "lodestar method" — "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" — to calculate presumptively reasonable fees, which may be enhanced or reduced based on other factors such as the success achieved by the attorney. *Hensley v. Eckerhart*, 461 U.S. 424, 433-35 (1983). State courts generally employ a similar framework, but the recent Michigan Supreme Court case of *Smith v. Khouri*, 481 Mich. 519, 751 N.W.2d 472 (2008), suggests a slightly different approach to this task. *See Int'l-Matex Tank Terminals-Ill. v. Chem. Bank*, No. 08-1200, 2010 WL 3222515 (W.D. Mich. June 16, 2010) (discussing *Smith* in the context of motion for attorney's fees in a suit involving the wrongful dishonor of a letter of credit).

To determine a reasonable fee, *Smith* held that "a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services . . . us[ing] reliable surveys or other credible evidence of the legal market." *Smith*, 481 Mich. at 530-31, 751 N.W.2d at 479. The court should then multiply this rate by "the reasonable number of hours expended in the case . . . . The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee," but should not be presumed reasonable. *Id.* at 531, 751 N.W.2d at 479-80; *Poly-Flex Constr., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 600 F. Supp. 2d 897, 916 (W.D. Mich. 2009). That approach departs from the method used by federal courts in fee-shifting cases, *see B & G Min., Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 662 (6th Cir.

-3-

2008) (recognizing a "'strong presumption' that the lodestar represents the 'reasonable' fee" (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986))), but the Court will apply it nonetheless because state law governs in this context.  *Big Yank Corp.*, 125 F.3d at 312 & n.5.

Under the state law method, after reaching the lodestar, a "baseline figure," the court should apply a multitude of factors drawn from case law and court rules to enhance or reduce the award. *Smith*, 481 Mich. at 533, 751 N.W.2d at 480-81.  The court pointed to *Wood v. Detroit Auto. Inter-Ins. Exch.*, 413 Mich. 573, 321 N.W.2d 653 (1982), and Mich. R. Prof. Cond. 1.5(a) as sources for factors courts should consider.  In *Wood*, the court listed six such factors:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

*Id.* at 588, 321 N.W.2d 653 (quoting *Crowley v. Schick*, 48 mich. App. 728, 737, 211 N.W.2d 217, 222 (1973)).  These factors overlap with those in Rule 1.5(a) of the Michigan Rules of Professional Conduct, on which trial courts had often relied when adjudicating fee requests:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

Mich. R. Prof. Cond. 1.5(a).

The *Smith* court emphasized that "the burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Smith*, 481 Mich. at 531, 751 N.W.2d at 480 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). To support the reasonableness of the hours expended, the fee application must include "detailed billing records" and evidentiary support. *Id.* at 532, 751 N.W.2d at 480. The court must review these records "line-by-line" to determine whether the time spent on each individual task was reasonable. *Poly-Flex Constr., Inc.*, 600 F. Supp. 2d at 918 (citing *Bonkowski v. Allstate Ins. Co.*, 281 Mich. App. 154, 175, 761 N.W.2d 784, 797 (2008)).

The plaintiff has not submitted any itemized time records to support the claim for attorney's fees. Instead, counsel submitted affidavits of plaintiff's attorneys Edward H. Pappas of Dickinson Wright and Brian M. Moore of Dykema Gossett describing broad categories of tasks with blocks of time allotted to them. Mr. Pappas avers that his hourly rate is $525 and that he spent 21 hours on the case, which he breaks down by general task in a table, in 2009. He also avers that Natalie L. Yaw billed an hourly rate of $205 and spent 45 hours on the case in 2009, similarly broken down generally by task in a table. Pappas avers that Wells Fargo incurred a total of $20,501 in attorneys fees and $1,424.47 in related expenses (totaling $21,925.47) for Dickinson Wright's work. Mr. Moore avers that his hourly rate was $340 in 2009 and $360 in 2010, and that he spent 138 hours on the case through April 30, 2010 (identified in blocks by tasks). He also avers that Joseph H. Hickey's hourly rate in 2009 was $400 and in 2010 was $415, and that he spent 75 hours on the case through April 30, 2010 (broken down in blocks by task). Eric S. Rein's 2010 hourly rate was $490 and he spent 4 hours on post-judgment asset recovery matters in 2010. Wells Fargo incurred a total

of $166,959 in attorney's fees and $10,242.50 in expenses, for a total of $177,201.50 due to Dykema Gossett. No affidavits have been furnished by Joseph H. Hickey, Eric S. Rein, Natalie L. Yaw, or Paul A. Wilhelm, who worked on the case in the post-judgment phase.

Plaintiff's counsel have declined to attach the itemized bills for their attorney's fees, contending that they may contain privileged information, and although they offered to submit them to the Court *in camera*, they refused to furnish copies to the defendants for their review. The Court does not believe that the possibility of privileged information in billing records excuses the requirement to furnish statements containing the level of detail required by the *Smith* court. Plaintiff's counsel are from large law firms, presumably employing lawyers experienced with contractual fee-shifting provisions. Those lawyers became familiar with the loan documents, and surely they should have anticipated making a fee request before they prepared their billing records, which would have allowed them to avoid including sensitive information in their descriptions of the work performed. Moreover, there are other ways to furnish the requisite detail and avoid the problem that block billing causes counsel and the Court in reviewing attorney's fee claims for reasonableness. Nor is the offer to submit those statements *ex parte* a sufficient proxy to full disclosure and adversarial testing that is contemplated by the process. The Carnago defendants have challenged the reasonableness of the fees on several grounds that must be answered by information about the tasks the attorneys performed and how much time each lawyer spent on each activity.

The Carnago defendants take issue with the plaintiff's claim of fees for specific tasks, which these defendants contend, should not be compensated. For instance, the Carnago defendants argue first that the plaintiff should not be compensated for efforts related to the post-judgment garnishments on the De La Salle High School Endowment Fund because "it is inconceivable how

Plaintiff could have thought that an account belonging to De La Salle High School was in any way an account belonging to Mr. Carnago," even though the defendant had signing authority on the account.   Carnago Resp. Br. [dkt. #291] at 2.   The plaintiff released this garnishment almost immediately after receiving a challenge from De La Salle's attorney.   Second, the Carnago defendants challenge the plaintiff's failure to itemize its time and the reasonableness of the amounts requested.   Third, the defendants criticize the plaintiff for failing to specify whether the fees requested were the amounts it actually was charged for the services provided; the defendants suggest that the plaintiff may receive a below-market rate for a high volume of business.   The guaranty agreement the defendants signed limits the plaintiff's recovery to the fees that actually were "incurred."   The defendants argue that without this information, they cannot challenge the reasonableness of the plaintiff's request.   Fourth, the defendants argue that the plaintiff should not be compensated for duplicate work performed by two different law firms or two attorneys within one firm — for example, when two attorneys attended the same conference — and insist that they cannot distinguish what work was duplicative without itemized records.   Finally, the Carnago defendants challenge the imposition of fees incurred by the plaintiff for actions taken against other defendants in this matter, but without itemized records, they say that they cannot point to any specifics.

The defendants' third objection is easily resolved.   The affidavits by attorneys Pappas and Moore each aver that Wells Fargo "incurred" the fees recited in the respective affidavits, so it is reasonable to assume that the amounts stated actually were charged by the lawyers to the client.   The other objections have merit, however.   The garnishment of the De La Salle High School Endowment Fund was not appropriate and no fees will be awarded for that task.   Time spent by multiple lawyers

-7-

on the same task is not compensible, nor can the defendants be held accountable for the time spent by the second law firm to familiarize itself with loan documents and the first law firm's work. The plaintiff, of course, may change law firms at will, but the redundancy costs caused by its choices may not be visited on its borrowers. *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006) ("The court should . . . exclude excessive, redundant or otherwise unnecessary hours." (quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994))); *see also Hensley*, 461 U.S. at 437 ("Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." (addressing attorney's fees under 42 U.S.C. § 1988))).

The paucity of detail does not permit the Court to conduct the "line-by-line" review contemplated by the *Smith* protocol. *See Poly-Flex Constr., Inc.*, 600 F. Supp. 2d at 918. Nonetheless, it is obvious to the Court that substantial fees were earned in this case, despite the parties' initial characterization of the lawsuit as a "straight-forward breach of contract (guaranty) action." Carnago Resp. Br. [dkt. #291] at 1. The defendants, particularly the Carnago defendants, aggressively fought the matter at every turn, which was their right, despite the apparent obviousness of their liability. However, considerable time has passed since this motion was submitted — the parties argued it in October 2010 — and no additional or clarifying information has been forth coming. The Court will attempt to resolve the motion with the information the plaintiff chose to furnish, but the Court will allow plaintiff's counsel to submit additional detail if they choose.

As evidence of the reasonableness of the claimed hourly rates, the plaintiffs have presented only the affidavits of counsel. That is not sufficient. *Smith*, 481 Mich. at 531, 751 N.W.2d at 480

-8-

("the burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney's own affidavits . . . ."). However, State Bar surveys of rates may be an appropriate guide, although they are not dispositive in establishing the market rate. *B & G Min., Inc.*, 522 F.3d at 664 (citing *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 & n.6 (6th Cir. 2007) (referring to an Ohio State Bar Association survey of hourly billing rates "[a]s a point of reference")). The most recent Michigan survey states that the mean hourly rates for attorneys in practice over 35 years (Pappas) is $265, 26 to 30 years (Rein) is $248, 16 to 25 years (Hickey) is $255, 11 to 15 years (Moore) is $232, six to 10 years (Wilhelm) is $205, and one to two years (Yaw) is $174. State Bar of Michigan 2010 Economics of Law Practice Summary Report at 7, available at  http://www.michbar.org/pmrc/ articles/0000146.pdf (last visited May 5, 2011). Hourly billing rates for large firms (over fifty members; both the Dickenson and Dykema firms are that large) range from $175 (25th percentile) to $525 (95th percentile). *Id.* at 8. Based on the survey results and affidavits, and in the absence of any other evidence, the Court determines that the reasonable hourly rates are $400 for Pappas, $300 for Rein and Moore, $340 for Hickey, $265 for Wilhelm, and $195 for Yaw.

Assessing the reasonable time spent on the tasks is more difficult. Pappas averred that he spent 9 hours reviewing the loan documents and preparing demand letters, 5 hours preparing the complaint and reviewing the responsive pleadings, and 7 hours on a task entitled "MPC Investors Default" and on discovery-related matters. He did not state what all that entailed in any detail. Pappas also averred that Natalie Yaw spent 5 hours reviewing the loan documents and preparing demand letters (Mr. Pappas does not explain how her function differed from his on these tasks); 25 hours on jurisdictional research, preparing the complaint, serving the complaint, and reviewing the responsive pleadings, and 15 hours on "MPC Investors Default" and discovery-related matters.

-9-

There is no explanation how the tasks were divided, how the attorneys' functions differed, whether and to what extent these tasks overlapped, or if any of Pappas's time was spent supervising or reviewing Yaw's work. Moreover, there is no explanation why it was necessary to spend 25 hours on the question of jurisdiction. Based on the information before it, the Court finds that Pappas's time was reasonably spent, but Yaw's was not. The Court will award 21 hours at $400 for the Dickenson attorney's fees, or $8,400, plus $1,424.47 in expenses, which the defendants do not challenge, totaling $9,824.47.

Moore averred in his affidavit that he spent 50 hours reviewing the loan documents, assessing liability and damages, completing the MPC Investors default judgment motion, participating in Rule 26 conferences and disclosures, conducting witness interviews, and attending status conferences. He does not explain how the descriptions overlapping with those of Dickinson Wright were not duplicative services. Moore spent 39 hours in facilitation and settlement discussions, 37 hours on the motion for summary judgment, and 12 hours on post-judgment collection matters. As noted above, the affidavit does not provide further details about the tasks performed for each of these categorical items.

Moore also averred that Joseph Hickey, another attorney at Dykema Gossett, also worked on the case. He says Hickey spent 11 hours reviewing loan documents and assessing liability and damages, 25 hours on facilitation and settlement; 30 hours on the motion for summary judgment, and 9 hours on post-judgment collection matters. The affidavit does not provide further details about the tasks performed for each of these categorical items, nor does it explain how Hickey's time did not overlap with time claimed by Moore under nearly identical descriptions or with the tasks performed by Dickinson Wright.

-10-

Finally, Mr. Moore averred that Eric Rein, another attorney at Dykema Gossett, participated in post-judgment collection efforts, spending 4 hours.

Mr. Moore averred that the firm specifically excluded from its fee request against the limited guarantor time spent on negotiating and documenting the settlement with limited guarantor Dominic Moceri Sr. and preparing post-judgment notices of judgment lien (40 of the 44 notices were for general guarantors). The affidavit does not explain how the tasks were divided between these two groups of defendants.

Mr. Moore averred in a supplemental affidavit that Paul Wilhelm spent 16 hours on the Carnago defendants' objections to writs of garnishment and the plaintiff's motion to adjourn the hearing on the garnishments; 28 hours on the plaintiff's motion for supplemental proceedings (briefing and attendance) and preparation of subpoenas; 32 hours on inspecting and inventorying the safety deposit box and on the plaintiff's motion to compel, for sanctions, and for contempt; 50 hours on the Carnago defendants' motion to quash the June 11 subpoenas, joint report to the magistrate judge, the Carnago defendants' objections to the report and recommendation, and the plaintiff's response to the objections; and 17 hours on asset investigation and legal research on collection rights against certain assets. Moore also averred that Mr. Rein spent an additional 5 hours on the Carnago defendants' objections to writs of garnishment and the plaintiff's motion to adjourn the hearing on garnishments; 12 hours on the plaintiff's motion for supplemental proceedings (briefing and attendance) and preparation of subpoenas; 4 hours on inspecting and inventorying the safety deposit box and on the plaintiff's motion to compel, for sanctions, and for contempt; 12 hours on the Carnago defendants' motion to quash the June 11 subpoenas, joint report to the magistrate judge, the Carnago defendants' objections to the report and recommendation, and the plaintiff's

-11-

response to the objections; and 9 hours on asset investigation and legal research on collection rights against certain assets. The affidavit does not explain how Mr. Rein's functions differed from Mr. Wilhelm's functions on these overlapping tasks.

In addition, Mr. Moore averred that he spent 2 hours on the settlement with the remaining Moceri defendants (general guarantors). Mr. Hickey also spent 13.2 hours on this settlement. The affidavit does not explain how the two attorneys' functions differed in this task.

Attorneys for the firm also prepared, filed, and recorded Notices of Judgment Liens against the general guarantors. Moore spent 0.5 hours on this task and Mr. Wilhelm spent 10.6 hours. In addition, Maureen Bracey, a paralegal with the firm, spent 15.3 hours on this task. The affidavit does not explain how the attorneys' and paralegal's functions differed.

The Court observes that Mr. Moore was the primary attorney for the plaintiff throughout the litigation. The Court also finds that the time he spent on the case through judgment was reasonable. However, because there is no explanation how Moore's time did not duplicate the charges made by Dickenson Wright, there is no proof that the overlap did not represent the second law firm's redundancy of work already performed, such as reviewing loan documents. Therefore, the Court will deduct from Mr. Moore's time the 21 hours credited to Mr. Pappas's time. The Court will approve 105 hours of Moore's time through judgment at $300 per hour, or $31,500. The record does not allow a finding that Hickey's time did not duplicate Moore's, so Hickey's pre-judgment time will not be compensated.

It appears that Mr. Wilhelm was the primary attorney on post-judgment matters. Moore averred that Wilhelm spent 185 hours on the case. Some of that time was spent pursuing writs of garnishment that had no merit, but most of the time was devoted to overcoming the Carnago

-12-

defendants' strong resistance to all judgment collection efforts. Although it is difficult to identify with precision the time devoted to pursuing the meritless garnishments, the Court believes it is reasonable to discount Mr. Wilhelm's time by fifteen percent to account for the disqualified time. Therefore, the Court will allow fees for Mr. Wilhelm representing 157.25 hours at $205 per hour, or $33,236.25. The evidence furnished by the plaintiff is insufficient to allow the Court to determine that time spent on judgment collection efforts did not duplicate Mr. Wilhelm's work. Therefore, time claimed by other timekeepers will not be allowed. The Dykema firm also seeks compensation for litigation expenses of $5,121.25, which the defendants do not dispute.

The Court has considered the factors listed in *Wood v. Detroit Auto. Inter-Ins. Exch.* and Michigan Rule of Professional Conduct 1.5(a) and concludes that none of them supports an adjustment to the lodestar amount calculated by the Court. Finally, the plaintiff represents that the fees and expenses in pursuing its case against the limited guarantor, Gerald Carnago, were approximately 6.5 percent less than the amount against the other defendants. The Court will apply that discount as well to the fees awarded to the plaintiff for the work performed by the Dykema firm.

The Court finds, therefore, that the plaintiff is entitled to attorney's fees and expenses against all the judgment defendants except Gerald Carnago and his trust in the amount of $71,281.97. The attorney's fee and expense award against Gerald Carnago and his trust is limited to $67,620.11. The record submitted by the plaintiff does not support any greater claim for fees and costs.

If the plaintiff desires additional fees, it must provide detailed billing records to the Court and the defendants. Such records should include unredacted, itemized bills showing the work performed by task (without block billing), the time spent, and the attorney who performed the task.

-13-

If the plaintiff moves for additional fees and furnishes those records, the Court will direct the parties to confer, and then will order a reply date.

Accordingly, it is **ORDERED** that the plaintiff's renewed motion for attorney's fees and expenses [dkt. #187] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiff shall recover of defendants MPC Investors, LLC, Dominic Moceri, Francis Moceri, Mariano Moceri, Peter Burton, Robert Katzman, Laurence Goss, Salvatore Palazzolo, Sebastian Palazzolo, Gregory Carnago, and their respective trusts attorney's fees and costs in the amount of $71,281.97.

It is further **ORDERED** that the plaintiff shall recover of defendants Gerald Carnago and his trust attorney's fees and costs in the amount of $67,620.11.

It is further **ORDERED** that if the plaintiff intends to seek additional fees, it must do so by motion filed **on or before May 13, 2011**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   May 3, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 3, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

-14-